# U. S. District Court

## Western District of Washington

Seattle: 206-553-1590 Tacoma: 253-593-6313

02 JUN -6 PM 3:46

TO: D Joseph Hurson

FAX: 223-7107

SENT ON: 06/06/02 03:01 PM

RE Case No: 2:01-md-01407 Docket No: 00000619

PAGES: 18

I hereby certify that the attached document is a true and correct copy of the original on file in my office.

ATTEST: Bruce Rifkin, Clerk, U. S. District Court

If this fax is incomplete or cannot be delivered as addressed, please call Shirley Lindberg or Nealann Skari at 206-553-4170.

FILED ENTERED
LODGED RECEIVED

JUN 05 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION,

This document relates to:

Toombs v. Bayer Corp., et al., No. C02-32R

Fife, et al. v. American Home Products Corp., et al., No. C01-2144R

Ricks, et al. v. American Home Products Corp., et al., No. C01-1408R

Havard v. SmithKline Beecham, Inc., et al., No. C01-1645R

Burbel, et al. v. SmithKline Beecham Corp., et al., No. C02-258R

MDL NO. 1407

ORDER GRANTING DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS AND DENY CLASS CERTIFICATION

cc: counsel; BJK

## I. INTRODUCTION

THIS MATTER comes before the court on Defendants' Motion to Strike Class Allegations and Deny Class Certification ("Defendants' motion"). Having reviewed pleadings filed in support of and in opposition to the motion, along with the remainder of the

record, and, being fully advised, the court finds and concludes as follows:

II. BACKGROUND

A. Factual Background

Numerous prescription and non-prescription decongestants and appetite suppressants included phenylpropanolamine ("PPA") for a number of years. Beginning in 1979, case reports appeared associating PPA use with, primarily, hypertension and strokes.

In the early to mid-1990s, the Yale Hemorrhagic Stroke Project ("HSP") began an epidemiological study investigating links between PPA and hemorrhagic strokes. Various drug companies sponsored the HSP in consultation with the Food and Drug Administration ("FDA"). In the midst of this ongoing study, the FDA issued a statement addressing their decision to not withdraw approval for PPA prior to the conclusion of the HSP.

The HSP found an "association" or "suggestion of an association," the meaning and scope of which is now disputed, between PPA and hemorrhagic strokes. In November 2000, the FDA requested voluntary removal of PPA-containing products from the market.

Following the filing of numerous lawsuits throughout the country, the Judicial Panel on Multidistrict Litigation centralized these cases for consolidated pretrial proceedings in the Western District of Washington, denominated MDL 1407.

B. Proposed Classes

Plaintiffs seek to certify four nationwide classes and one Louisiana statewide class. The proposed classes consist of

individuals who have ingested products containing PPA, and (a) who have sustained injury or damage, or (b) who may suffer such injury or damage in the future, or (c) who have sustained a justifiable fear of sustaining such injury or damage in the future.

Class members in the proposed nationwide classes (hereinafter the "Toombs," "Ricks," "Havard," and "Burbel" classes) assert claims for strict products liability, defective product design and composition, failure to warn, negligence, misrepresentation, fraudulent misrepresentation and concealment, and breach of implied and express warranties.[1] The proposed Louisiana statewide class (hereinafter the "Fife" class) asserts claims for violation of the Louisiana Products Liability Act.

Named plaintiff Bennie Toombs took thirty five different PPA-containing products and suffered a stroke. Named plaintiff Aline Ricks consumed four different PPA-containing products and suffered strokes on three different occasions. Her husband, named plaintiff Ernest Ricks, asserts claims associated with his wife's injuries. Named plaintiff Joyce Havard took up to four different PPA-containing products and suffered a single stroke,

---

[1] The court applies this decision to the proposed Burbel class, which was transferred to the MDL following the filing of Defendants' motion, at defendants' request. Defendants also indicate that other class complaints may have been filed in federal court in Louisiana, but not yet transferred to the MDL court at the time of defendants' briefing. To the extent applicable, the court will extend its holding on this issue to similar proposed classes transferred to the MDL court.

while the named plaintiffs in the Burbel class took one or more of at least six different PPA-containing products and suffered heart attacks, strokes, and other diseases. Finally, the named plaintiffs in the Fife class took one or more of some eighteen different PPA-containing products, or had parents who consumed those products, and suffered strokes.

Collectively, these lawsuits name well over fifteen different entities, as well as their numerous corporate predecessors, as defendants.

C. Procedural Background and Requested Discovery

Defendants' motion was filed in response to a MDL case management order setting a schedule for the filing of a motion to strike class allegations. In establishing this schedule, the court afforded plaintiffs an opportunity to conduct discovery and to file both an opposition and sur-reply. Plaintiffs declined to request or conduct discovery in response to Defendants' motion and, instead, responded with an opposition and sur-reply, outlining their arguments in support of class certification.[2]

---

[2] The court planned this schedule as a means of expeditiously resolving the issue of class certification. See Fed. R. Civ. P. 23(c)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.") As stated in plaintiffs' own briefing: "The class certification determination is, essentially, a case management decision which may and should be made expeditiously, to put in place the basic framework within which the litigation will proceed." See Plaintiffs' Opposition to Defendants' motion to Strike Class Allegations and Deny Class Certification ("Plaintiffs' opposition"), at 7. As such, the court denies plaintiffs'

However, in that sur-reply, plaintiffs request that the court allow discovery regarding the arguments raised in Defendants' motion. The court denies plaintiffs' request for discovery. Plaintiffs were already afforded, but declined this opportunity.[3] They have also failed to demonstrate that discovery would be likely to yield persuasive information substantiating the class allegations. See Doninger v. Pacific N.W. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977). Further, the court finds the information currently before the court sufficient on which to base its decision as to the issue of class certification. See Kamm v. California City Dev. Co., 509 F.2d 205, 210 (9th Cir. 1975) ("In determining whether to grant discovery, the court must consider its need, the time required, and the probability of discovery resolving any factual issues necessary for the determination. . . . Where the necessary factual issues may be resolved without discovery, it is not required.")

## III. DISCUSSION

Federal Rule of Civil Procedure 23 governs class actions. Plaintiffs, as the party seeking class certification, bear the burden of demonstrating that they have met each of the four

---

request that the court apply a Rule 12 standard to Defendants' motion.

[3] In this respect, the court finds inexplicable plaintiffs' assertion that there has been no "opportunity for Plaintiffs to conduct discovery to substantiate their claims." See Plaintiffs' Sur-Reply in Opposition to Defendants' motion to Strike Class Allegations and Deny Class Certification ("Plaintiffs' sur-reply"), at 7.

requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001)(citing Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

A trial court must conduct a "'rigorous analysis'" in order to determine whether the party seeking class certification has satisfied the prerequisites of Rule 23. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1233 (9th Cir. 1996) (quoting In re: Am. Med. Assoc., 75 F.3d 1069, 1078-79 (6th Cir. 1996)). The trial court possesses broad discretion on the question of class certification, but must exercise that discretion within the framework of Rule 23. Zinser, 253 F.3d at 1186.

Here, defendants contest certification based on plaintiffs' alleged inability to satisfy Rule 23(b)(1) or (b)(3), as well as the typicality requirement of Rule 23(a). However, because, as described below, plaintiffs have failed to satisfy any subpart of Rule 23(b), the court finds it unnecessary to address the typicality or any other requirement of Rule 23(a).

A. Rule 23(b)(3):

Rule 23(b)(3) allows for class certification where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common

issues will help achieve judicial economy." Valentino, 97 F.3d at 1234.

The proposed classes present products liability claims. Although no per se prohibition exists with respect to class certification in products liability litigation, many courts have "recognized the potential difficulties of 'commonality' and 'management' inherent in certifying products liability class actions." Zinser, 253 F.3d at 1186. See also Am. Med. Sys., Inc., 75 F.3d at 1084 (products liability classes often involve factual and legal issues that vary dramatically amongst individual class members).

Indeed, a substantial number of courts have declined to certify putative products liability classes. See, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)(asbestos); Zinser, 253 F.3d 1180 (pacemakers); Valentino, 97 F.3d 1227 (prescription drug); Am. Med. Sys., Inc., 75 F.3d 1069 (medical device); Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir. 1996) (tobacco); In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995) (contaminated blood solids); In re: Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847 (IUDs) (9th Cir. 1982) (hereinafter "Dalkon Shield").[4] But see, e.g., In re A.H. Robins Co., 880 F.2d 709 (4th Cir. 1989) (certifying Dalkon

---

[4] As demonstrated by defendants' briefing, a substantial number of district and state courts have also denied class certification in products liability cases. See Defendants' motion, at 8-10.

Shield Case); In re: Agent Orange Prod. Liab. Lit., 818 F.2d 145 (2d Cir. 1987) (certifying Agent Orange class). In so doing, courts have distinguished products liability class actions from those involving what courts deem "typical" mass torts:

> In the typical mass tort situation, such as an airplane crash or a cruise ship food poisoning, proximate cause can be determined on a class-wide basis because the cause of the common disaster is the same for each of the plaintiffs. In products liability actions, however, individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

Dalkon Shield, 693 F.2d at 853; accord Amchem Products, Inc., 521 U.S. at 609 ("In contrast to mass torts involving a single accident, class members in this case were exposed to different asbestos-containing products, in different ways, over different periods, and for different amounts of time, some suffered no physical injury, others suffered disabling or deadly diseases.")

However, because no prohibition on such classes exists, the court must consider whether these proposed classes satisfy the requirements of Rule 23(b)(3).

1. Common Issues of Fact:

Rule 23(b)(3) requires that common issues of fact predominate over individual questions. The Ninth Circuit opinion in Zinser cites a leading commentator as "cogently explain[ing]":

> "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or

> defense, a Rule 23(b)(3) action would be inappropriate. . . . Moreover, when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified."

253 F.3d at 1189 (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535-39 (2d ed. 1986)(footnotes omitted)(hereinafter "Federal Practice & Procedure")).

Here, the proposed classes comprise a multitude of individuals with different backgrounds, personal characteristics, medical histories, health problems, and lifestyles. These individuals allegedly consumed one or more of a variety of different PPA-containing products, produced by various defendants. The products were consumed at different times, in different amounts, and with varying results. That is, some individuals sustained a single injury, others multiple injuries, and still others no physical injuries whatsoever.

Given these differences,[5] for each individual class member, an inquiry into specific causation might require a court to examine, among other things: an individual's family and medical history; age; gender; diet; lifestyle, including the use of alcohol, tobacco, and other legal or illegal drugs; the product

[5] The court notes that, although it pays particular attention to the individual differences between the plaintiffs in deciding whether the proposed classes satisfy the requirements of Rule 23, this holding does not reflect any opinion with respect to issues relating to expert evidence of specific causation.

used and the amount of PPA, if any,[6] contained within that product; the timing of ingestion of the product; whether the individual followed the directions accompanying the product, exceeded the recommended dosage, or combined the product with other products and the effect of that combination;[7] whether that individual suffered an injury, when the injury occurred, the type of injury suffered, and the number of occurrences of injury; the likelihood of injury; and/or the foundation as to whether a justifiable fear of injury exists. An assessment of specific causation - in this case, whether PPA caused, may cause, or caused a fear of injury to these individuals - thus, necessarily dissolves into a myriad of individualized causation inquiries. See Amchem Products, Inc., 521 U.S. at 609; Zinser, 253 F.3d at 1189 (finding it "inescapable that many triable individualized issues may be presented" in causation and damages determinations presented by product liability, negligence, and medical monitoring claims); Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 96 (W.D. Mo. 1997) ("Liability will not turn on

---

[6] Defendants note the complication stemming from the issue of product identification. That is, apparently defendants sold products not containing PPA under the same brand name as products containing PPA. Further, apparently some retailers sold "house brands" of products containing PPA in packages similar to certain defendants' brand name PPA-containing products.

[7] The interconnection between a liability finding (i.e. negligence) and an affirmative defense (i.e. comparative fault) raises additional individual issues. See Dalkon Shield, 693 F.2d at 853.

whether cigarettes are generally capable of causing disease: liability will depend upon whether cigarettes caused a particular plaintiff's disease. The latter inquiry will turn [on] numerous individual factors, rendering the causation factor inappropriate for common disposition.")[8]

Plaintiffs assert that predominance does not require that no individual questions exist, just that those questions are less important than the common issues. In support, plaintiffs point to a number of cases in which courts have found common issues to predominate over individual questions. Yet, a majority of the cases proffered dealt with "typical" mass torts, and, thus, involved individual issues relating only to the extent of injuries and damages sustained. In other words, the cause of injury was never in question. See, e.g., Sterling v. Velsicol Chem. Corp., 855 F.2d 1188 (6th Cir. 1988) (ground water contamination); Sala v. National R.R. Passenger Corp., 120 F.R.D. 494 (E.D. Pa. 1988) (train derailment); In re Federal Skywalk Cases, 95 F.R.D. 483 (W.D. Mo. 1982) (hotel skywalk collapse); Coburn v. 4-R Corp., 77 F.R.D. 43 (E.D. Ky. 1977) (supper club fire). See

[8] See also Am. Med. Sys., Inc., 75 F.3d at 1085 (finding certification improper given the absence of evidence that common issues predominated, where the products at issue differed, each plaintiff had a unique complaint, and each received different information and assurances from his treating physician); Duncan v. Northwest Airlines, Inc., 203 F.R.D. 601, 613 (W.D. Wash. 2001) (reciting numerous variables that would raise individual issues with respect to proof of causation relating to effects of exposure to cigarette smoke and stating that "the jury's decision would turn on each plaintiff's individualized facts.")

also Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir. 1992) (oil refinery explosion); Adams v. CSX R.R., 615 So. 2d 476 (La. App. 4th Cir. 1993) (toxic chemical spill).[9]

Plaintiffs further set forth numerous common issues, such as questions as to whether PPA contains a defect or causes or contributes to different medical conditions, and when the defendants should have been aware of an association between these conditions and PPA use. Yet, although unquestionably important, the number of individual questions posed by the proposed classes

---

[9] The court finds the remaining cases cited by plaintiffs in support of their arguments overshadowed by the multitude of decisions declining to certify products liability class actions. See Defendants' motion, at 7-10. Moreover, the court finds the cases cited by plaintiffs in their briefing as a whole distinguishable from the present case. See, e.g., Hanlon v. Chrysler Corp., 150 F.3d 1011, 1021 (9th Cir. 1994) (defective minivan rear latches; class did not include any personal injury or wrongful death victims and was certified in the context of classwide settlement); Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 470 (5th Cir. 1986) (asbestos; involving the law of only one state and the prospect of trial in only one district); In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig., 164 F.R.D. 222, 225 (S.D. Ohio 1995) (involving two nearly identical pacemaker leads manufactured by one defendant); In re Copley Pharm., 158 F.R.D. 485, 487, 490 (D. Wyo. 1995) (involving only four contaminated batches of a drug produced by the same company and consumed only by individuals with pre-existing respiratory disorders). See also Valentino, 97 F.3d at 1231 (distinguishing the Second Circuit's opinion in Agent Orange Prod. Liab. Lit., 818 F.2d 145, in which that court "made it quite clear that the common issue . . . that caused class litigation to be both appropriate and superior . . . was the common existence of a government contractor defense"). Plaintiffs also cite one case which was later reversed on appeal, Castano v. American Tobacco Co., 160 F.R.D. 544 (E.D. La. 1995), rev'd, 84 F.3d 734 (5th Cir. 1996), and another in which the Fifth Circuit reversed a grant of class certification, Smith v. Texaco, Inc., 263 F.3d 394 (5th Cir. 2001).

clearly overwhelm any common questions, rendering class treatment inappropriate. See, e.g., Dalkon Shield, 693 F.2d at 856 ("few issues that might be tried on a class basis in this case, balanced against issues that must be tried individually, indicate that the time saved by a class action may be relatively insignificant").

In sum, the court finds that plaintiffs have failed to show that common issues of fact predominate over questions affecting individual class members. As such, the court finds that the existence of predominating individual issues of fact alone renders all of the proposed classes unsuitable for class certification under Rule 23(b)(3).[10]

B. Rule 23(b)(1):

In their complaints, plaintiffs assert that the proposed classes also fulfill the requirements of Rule 23(b)(1)(B). However, in Plaintiffs' opposition, they argue that the proposed classes meet the requirements of Rule 23(b)(1)(A), without mentioning (b)(1)(B). Defendants argue that plaintiffs fail to meet the requirements of either Rule 23(b)(1)(A) or (b)(1)(B). The court will therefore address the viability of the proposed

---

[10] Because the court finds that individual factual questions overwhelm any questions common to the class as a whole, the court finds it unnecessary to address either the questions of law or superiority aspects of Rule 23(b)(3). See, e.g., Zinser, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish her or her right to recover individually, a class action is not 'superior.'") (citations omitted).

classes under both subsections of Rule 23(b)(1).

1. Rule 23(b)(1)(A):

Rule 23(b)(1)(A) allows for class certification where "the prosecution of separate actions by or against individual class members would create a risk of [] inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class[.]"

Plaintiffs assert that the risk of two exactly similarly situated individuals in different jurisdictions receiving contrasting verdicts suffices to meet the requirements of Rule 23(b)(1)(A). However, this argument has been squarely rejected by most courts, including the Ninth Circuit:

> The phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." Rule 23(b)(1)(A) certification requires more, however, "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts. . . . " Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages.

Zinser, 253 F.3d at 1193 (quoting 7A Federal Practice and Procedure § 1773 at 431 and 429) (internal citations omitted).[11] See also In re Dennis Greenman Secs. Litig., 829 F.2d 1539, 1545 (11th Cir. 1987) (finding that Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages); In re Bendectin Prod.

---

[11] Plaintiffs failed to respond to this argument or address Rule 23(b)(1)(A) in any respect in their sur-reply.

Liab. Litig., 749 F.2d 300, 305 (6th Cir. 1984) ("The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A).")

As such, the court finds that plaintiffs have failed to meet their burden of establishing the requirements for certification entailed in Rule 23(b)(1)(A).

2. Rule 23(b)(1)(B):

Rule 23(b)(1)(B) allows for certification where separate actions would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]"

This provision typically provides for certification of a non-opt out class where each putative class member claims entitlement to a pro rata share of a "'"fund" with a definitely ascertained limit[.]'" Zinser, 253 F.3d at 1197 (quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 841-42 (1999)). "The Ninth Circuit has expressly barred class certification under 23(b)(1)(B) for independent tort claims seeking compensatory damages, unless separate actions 'inescapably will alter the substance of the rights of others having similar claims.'" Dalkon Shield, 693 F.2d at 851 (citations omitted); see also Zinser, 253 F.3d at 1196-97.

Therefore, in order to certify such a class in the context

of a limited fund claim, the court must have before it, at a minimum, evidence as to the assets and potential insolvency of the defendants involved in these cases. See, e.g., Dalkon Shield, 523 F.2d at 852 (finding that the district court erred in certifying a Rule 23(b)(1)(B) class without sufficient evidence as to the defendant's "actual assets, insurance, settlement experience and continuing exposure."); In re Agent Orange Prod. Liab. Litig., 506 F. Supp. 789-90 (refusing to certify a Rule 23(b)(1)(B) class where the plaintiffs offered no evidence as to the likely insolvency of the defendant).

Because plaintiffs did not brief this issue, the court remains unclear as to whether they possess any evidence as to the existence of a limited fund, or whether plaintiffs maintain some other basis for pursuing class treatment pursuant to Rule 23(b)(1)(B). In any event, plaintiffs have clearly not presented evidence showing that "separate actions 'inescapably will alter the substance of the rights of others having similar claims.'" Dalkon Shield, 693 F.2d at 851 (citations omitted).

As such, if plaintiffs did indeed intend to pursue this avenue for class certification, the court finds that they have failed to meet their burden of establishing the propriety of class certification under Rule 23(b)(1)(B).

## IV. CONCLUSION

For the reasons outlined above, the court finds insufficient support for certification of all proposed personal injury class actions under any subsection of Rule 23(b). The court hereby

GRANTS Defendants' Motion to Strike Class Allegations and Deny Class Certification, and hereby STRIKES the class allegations contained within plaintiffs' complaints.

DATED at Seattle, Washington this 5th day of June, 2002.

Barbara J Rothstein
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE