02-CV-00894-ORD

FILED ENTERED
LODGED RECEIVED

NOV 05 2003

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION,<br><br>This document relates to:<br><br>Horne v. Wyeth f/k/a American Home Products Corp., et al., No. C02-894R | MDL NO. 1407<br><br>ORDER DENYING CERTIFICATION OF KENTUCKY ECONOMIC INJURY CLASS |

THIS MATTER comes before the court on Defendant Wyeth's Motion to Deny Class Certification and Plaintiff's Motion to Certify Kentucky Class Action. (Dkts. 36, 43.) Having considered the pleadings filed in support of and in opposition to these motions, the court finds and rules as follows:

## I. BACKGROUND

Plaintiff Stephanie Horne, on behalf of a proposed class, seeks to recover damages from defendants Wyeth and Consumer Healthcare Products Association ("CHPA") in relation to the sale of over-the-counter medications containing phenylpropanolamine ("PPA"). Complaint at 1. The proposed class consists of "all consumers who purchased or ingested over-the-counter medications manufactured by [Wyeth], which contained PPA, that were sold in

the Commonwealth of Kentucky." Id. Horne alleges violations of the Kentucky Consumer Protection Act and the Kentucky Food, Drug and Cosmetic Act; unjust enrichment; breach of implied and express warranty; and battery.

## II. DISCUSSION

Federal Rule of Civil Procedure 23 governs class actions. Plaintiff, as the party seeking class certification, must demonstrate satisfaction of all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). The court has broad discretion to certify a class, but must exercise that discretion within the framework of Rule 23. Id.

Horne seeks certification of her class pursuant to Rule 23(b)(3). Rule 23(b)(3) allows for class certification where "the court finds that the questions of law or fact common to the members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." Id.

Rule 23(b)(3) identifies factors pertinent to the class certification analysis:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and,] (D) the difficulties in the management of a class action.

Fed. R. Civ. P. 23(b)(3). These factors are not exhaustive. Kamm v. California City Dev. Co., 509 F.2d 205, 212 (9th Cir. 1975). The total inquiry "'requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" Zinser, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 562 (2d ed. 1986)).

By order dated February 7, 2003, this court denied Rule 23(b)(3) certification to several putative national classes also seeking relief for economic injury related to the purchase of PPA-containing products. See In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 214 F.R.D. 614 (W.D. Wash. 2003) (hereinafter "In re PPA"). The court found that "considerations of manageability, the minuscule individual recoveries in comparison to the significant manageability problems, the extent and nature of litigation already commenced, and the existence of alternative remedies argue[d] strongly and persuasively against certifica-

tion." Id. at 616.

Horne submits that the concerns raised by the court in relation to the proposed national classes do not apply to her proposed class. She distinguishes her proposed class as limited to Kentucky and Wyeth, and as seeking damages under Kentucky statutes and common law allowing for recovery without individualized proof of injury. She points to the nature of the proposed unjust enrichment claims, as well as the proposed fluid recovery procedure, as arguing in favor of certification. Horne also asserts that there are no other cases filed or alternative remedies available to protect the citizens of Kentucky by enforcing applicable Kentucky laws.

However, the court finds these purported distinctions to be illusory. That is, although occurring on a smaller scale, the court finds plaintiff's proposed class plagued by the same problems previously identified by the court in relation to the proposed national economic injury class actions. Accordingly, the court will analyze the putative class using the same Rule 23(b)(3) factors it found dispositive in its prior decision. See In re PPA, 214 F.R.D. at 616-23.

A. Considerations of Manageability

The court's first and most significant concern in its prior economic injury class ruling was with the manageability of the action. Id. at 616-620. The manageability factor "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v.

Carlisle & Jacquelin, 417 U.S. 156, 164 (1974). In short, the court found "that individualized factual inquiries required for identification of the proposed class would render th[e] case unmanageable." In re PPA, 214 F.R.D at 616. The court noted that, in order to qualify for membership in the class, each potential class member would have to prove he or she purchased and possessed a non-expired PPA-containing product. Id. at 617-19. The court concluded that the "vast majority" of putative class members were unlikely to possess such proof, as most people do not keep detailed records of minor purchases such as over-the-counter medications. Id. Based on that concern and numerous other problems associated with proof of possession of a PPA-containing product, the court found that the class identification process would turn on the "vagaries of memory" and require a prodigious number of "mini-trials" that would "defy the court's ability to effectively and efficiently manage the litigation." Id. For the reasons described below, the court finds that its previous conclusions also argue against certification of Horne's proposed class.

1. More Limited Class:

Contrary to plaintiff's assertion, the smaller size of the proposed class does not render the court's previous findings inapplicable. In fact, in discussing Rule 23(a)'s numerosity factor, plaintiff opined that it was reasonable to assume that class members would number in the thousands or hundreds of thousands. See Horne's Mot. for Class Cert. at 18. A class of

this size faces the very same infirmities previously identified by the court. Additionally, because each of the proposed national classes were directed towards individual manufacturer-defendants, the limitation of this suit to Wyeth and CHPA provides no basis for distinguishing the proposed Kentucky class.

2. Kentucky Consumer Protection Act ("KCPA"):

The KCPA declares unlawful any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170 (2003). Horne contends that no individual proof of damage or injury is required to show that defendants committed an unlawful act under the KCPA.

However, Horne ignores the fact that any individual seeking to recover under the KCPA must fit within the protected class of persons defined by KRS 367.220. Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc., 836 S.W.2d 907, 909 (Ky. Ct. App. 1992). That section reads:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action[.]

Ky. Rev. Stat. § 367.220(1) (2003). Thus, Horne would not only have to show that defendants committed an unlawful act, but also that each putative class member suffered an "ascertainable loss of money" as a result of the unlawful practice. See Nicholson v. Clark, 802 S.W.2d 934, 939 (Ky. Ct. App. 1990) (upholding dismissal of KCPA claim because plaintiffs could not show that they

sustained an ascertainable loss). Determining that individual class members suffered an ascertainable loss would require the very same type of individualized inquiry that rendered the proposed national economic injury class actions unmanageable. Accordingly, the inclusion of a KCPA claim does not differentiate the proposed class from those previously denied certification.[1]

3. Kentucky Food, Drug and Cosmetic Act ("KFDCA"):

The KFDCA prohibits the "manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded," as well as the "dissemination of any false advertisement." Ky. Rev. Stat. § 217.175 (2003). As with the KCPA, Horne argues that the KFDCA creates a cause of action that does not require individual proof of injury. This contention is also without merit.

Because the KFDCA does not contain an independent cause of action, recovery for a violation of the act must occur pursuant to KRS 446.070. That provision states: "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation[.]" Ky. Rev. Stat. § 446.070 (2003). Thus, as KRS 446.070 also ties recovery to proof of an individualized violation, every class member would

---

[1] Moreover, the only Kentucky court to have considered the question doubted whether a class action lawsuit could be brought under the KCPA. See Arnold v. Microsoft Corp., No. 00-CI-00123, 2001 WL 193765 at *8 (Ky. Cir. Ct. July 21, 2000) ("Based on venue requirements and other language of KRS 367.220 . . . this Court also feels that KRS 367.170 was never meant to encompass class action litigants[.]")

have to prove the existence and amount of his or her claim. Consequently, the court also finds that Horne's KFDCA claim fails to distinguish the proposed class from those previously considered.

4. Unjust Enrichment/Disgorgement and Fluid Recovery:

Horne proffers the inclusion of an unjust enrichment claim and a fluid recovery, or cy pres, proposal as arguing in favor of certification. She asserts that it is not necessary to demonstrate that specific individuals were damaged by a defendant's acts to warrant a finding of disgorgement. See, e.g., Tractor and Farm Supply, Inc. v. Ford New Holland, Inc., 898 F. Supp. 1198, 1206 (W.D. Ky. 1995) (to establish unjust enrichment, a party must show: "(1) a benefit conferred upon the defendant at the plaintiff's expense, (2) a resulting appreciation of the benefit by the defendant, and (3) an inequitable retention of the benefit without payment for its value.") Horne stresses that fluid recovery would ensure that Wyeth would not be allowed to profit from ill-gotten gains.

However, neither the inclusion of an unjust enrichment cause of action, nor the proposal of a fluid recovery procedure sets the proposed class apart from the proposed national economic injury class actions. Indeed, the putative plaintiffs in those national classes pursued the very same cause of action and method of distributing damages. See In re PPA, 214 F.R.D. at 615, 620. As previously determined, an unjust enrichment cause of action and/or the adoption of a fluid recovery procedure would not

dispense with the need to identify the individuals entitled to class membership. See id. at 616-20 ("[T]he court's concerns lie in more than simply how to distribute unclaimed damages. Instead, the court faces the daunting task of determining who could claim those damages in the first place.") Therefore, plaintiff again fails to distinguish the proposed class.

B. Minuscule Individual Recoveries and Litigation Already Commenced

In denying certification of proposed national economic injury class actions, the court found that the minimal size of the individual recoveries relative "to the enormous costs in time, effort, and burdens on the court argue[d] against the superiority of class certification." Id. at 621. Comparing the numerous PPA-related personal injury actions with the paucity of those seeking solely economic injury damages, the court also found that the "litigation already commenced" factor argued against the superiority of class treatment. Id. Horne does not suggest and the court does not find any reason why these same factors would not apply equally to the proposed Kentucky class.

C. Alternative Remedies

Horne similarly does not address the court's previous finding with respect to the existence of alternative remedies. Id. at 621-22 ("To this day, defendants maintain refund and product replacement programs for individuals still in possession of PPA-containing products. It makes little sense to certify a class where a class mechanism is unnecessary to afford the class

members redress.") Instead, she asserts without further elaboration that, in the absence of certification, there would be no alternative means of adjudication because it would be cost prohibitive to bring individual claims for economic recovery. Again, the court finds that the same reasons previously articulated by the court with respect to alternative remedies apply in equal measure to the proposed class. Accordingly, the court finds that Wyeth's existing refund and product replacement programs offer superior redress as compared to the proposed class mechanism. See http://www.dimetapp.com/ppa.asp and www.robitussin.com/ppa/index.asp.[2]

## III. CONCLUSION

The court finds that Horne fails to demonstrate satisfaction of Rule 23(b)(3) for the same reasons identified in the court's previous denial of class certification of economic injury claims. As such, defendant's motion for denial of class certification is hereby GRANTED, while plaintiff's motion for class certification is DENIED.

DATED at Seattle, Washington this 5th day of November, 2003.

s/ BARBARA JACOBS ROTHSTEIN
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[2] Because the court finds the proposed class not suitable for certification pursuant to Rule 23(b)(3), it need not address the requirements of Rule 23(a).